Keith A. Custis
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Ashley Keller (*pro hac vice forthcoming*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
  tdl@kellerlenkner.com
Tom Kayes (*pro hac vice forthcoming*)
  tk@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice forthcoming*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| VICTORIA ABARCA, et al., | Case No. 3:18-cv-7502 |
| *Petitioners*, | |
| v. | **MOTION TO COMPEL ARBITRATION** |
| LYFT, INC., | **Date**:    January 17, 2019 |
| *Respondent*. | **Time**:    1:30pm |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, January 17, 2019, at 1:30 p.m. or as soon thereafter as the matter may be heard, Petitioners will and hereby do move this Court, pursuant to 9 U.S.C. §§ 3 and 4, for an Order to compel Defendant Lyft, Inc. to arbitrate Petitioners' claims in this action.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declaration of Tom Kayes, all records on file with this Court, and such other and further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

Dated: December 13, 2018               Respectfully submitted,

/s/ Keith A. Custis
Keith A. Custis
 kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California  90067
(213) 863-4276

Ashley Keller (*pro hac vice forthcoming*)
 ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
 tdl@kellerlenkner.com
Tom Kayes (*pro hac vice forthcoming*)
 tk@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice forthcoming*)
 wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Petitioners*

## I.   **INTRODUCTION**

In two recent rulings, the Ninth Circuit has established that individual arbitration is the only vehicle for Lyft drivers to vindicate their legal rights. This motion arises out of Lyft's attempt to deprive its drivers of even that option by intentionally flouting its obligation to pay the costs of drivers' arbitrations as required by their arbitration agreements.

Petitioners are 3,420 Lyft drivers in California and Massachusetts who signed agreements with Lyft that require them to arbitrate their disputes with Lyft. Under binding Ninth Circuit case law, Petitioners who wish to challenge their classification as independent contractors must submit individual arbitration demands. But Lyft—after forcing individual arbitration rather than allowing class or consolidated proceedings—has refused to pay the necessary arbitration costs for any of those demands thus preventing commencement and administration of the promised arbitrations. Lyft's conduct is manifestly unfair to Petitioners, who have no other forum for relief.

This motion should be granted for at least two reasons.

*First*, the arbitration agreements Petitioners signed are valid and require Lyft to arbitrate these claims. Petitioners drove for Lyft subject to the arbitration provision of Lyft's Terms of Service. That provision covers "any dispute, claim or controversy, whether based on past, present, or future events, arising out of or relating to: [Lyft's] Agreement." Lyft Terms of Service § 17(a), *available at* https://www.lyft.com/terms. There is no question that Petitioners' misclassification claims fall within the scope of the arbitration clause.

*Second*, Lyft's inaction has left Petitioners stuck in Arbitration No Man's Land. It has been three months since Petitioners raised their claims with Lyft and almost two months since the first Petitioners served their individual arbitration demands, yet Lyft has refused to pay the necessary fees to commence and administer arbitration in *any* of those cases. Lyft's refusal to pay means none of the arbitrations can even commence, let alone proceed to a hearing before an arbitrator.

In short, Lyft is disregarding the very agreement it has previously enforced for its own tactical advantage to prevent its drivers from obtaining justice. After denying its drivers' rights to bring their claims in court, Lyft now is refusing to begin arbitration proceedings unless and until

1   it decides it is convenient (or perhaps financially beneficial) to move forward. Lyft's conduct is

2   inexcusable. No driver should have access to justice entirely foreclosed by Lyft's unwillingness to

3   honor the very agreement it imposed on its drivers.

4       This Court should grant this motion and require Lyft to abide by its agreement by paying

5   all arbitration filing fees associated with Petitioners' claims within 30 days of this Court's Order,

6   and paying future invoices related to Petitioners' arbitrations within 14 days of receipt of those

7   invoices.

8   **II.**   **BACKGROUND**

9       **A.**   **Lyft's Contract With Its Drivers Requires Arbitration**

10       Petitioners' disputes with Lyft arise out of Lyft's Terms of Service. To start, the agreement

11   warns in its second sentence that it contains provisions that "will, with limited exception, require

12   you to submit claims you have against Lyft to binding and final arbitration on an individual basis."

13   Lyft's Terms of Service. The agreement's extensive arbitration provision is located in Section 17.

14   The provision is sweeping:

15       ALL DISPUTES AND CLAIMS BETWEEN US . . . SHALL BE EXCLUSIVELY
    RESOLVED BY BINDING ARBITRATION SOLELY BETWEEN YOU AND

16       LYFT. These claims include, but are not limited to, any dispute, claim or
    controversy, whether based on past, present, or future events, arising out of or

17       relating to: this Agreement and prior versions thereof (including the breach,
    termination, enforcement, interpretation, or validity thereof), . . . payments made

18       by your or any payments made or allegedly owed to you, . . . any city, county, state
    or federal wage-hour law, . . . Fair Labor Standards Act, . . . state statutes, . . . and

19       all other federal and state statutory and common law claims.

20   *Id*. § 17(a). Further, the arbitration provision states—in a section titled "Arbitration Fees and

21   Awards"—that "Lyft ***shall*** pay all costs unique to arbitration . . . including the regular and

22   customary arbitration fees and expenses" for claims brought by a driver against Lyft that "are

23   based on an alleged employment relationship between Lyft and Driver." *Id*. §17(e) (emphasis

24   added).

25

26

27

28                            2

**B.** **Lyft Touts Arbitration's Benefits and Successfully Enforces Its Arbitration Provision to Compel Driver Claims to Arbitration**

To force its drivers' legal claims into arbitration instead of court, Lyft has repeatedly extolled the virtues of arbitration and the policy favoring arbitration embodied in the Federal Arbitration Act ("FAA"). For example, Lyft has noted that the "Supreme Court has repeatedly emphasized that courts are obligated to enforce arbitration agreements as written because the FAA 'reflects an emphatic federal policy in favor of arbitral dispute resolution.'" Kayes Decl., Ex. A at 9. It has stated that "[w]here there is an agreement to arbitrate, the Court ***must*** compel arbitration because 'courts must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms.'" *Id.* at 10 (emphasis added). And it has argued that, "[g]iven the strong federal policy in favor of arbitration, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* at 9.

Lyft has used these arguments to successfully compel drivers' claims to arbitration and eliminate the ability of drivers to litigate collectively. *See, e.g.*, *Peterson v. Lyft, Inc.*, No. 16-CV-07343-LB, 2018 WL 6047085 (N.D. Cal. Nov. 19, 2018) (compelling a dispute brought by a class of drivers to arbitration); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945 (N.D. Cal. 2015) (same); *Kingsbury v. Lyft, Inc.*, No. 17 C 2272, 2018 WL 905509 (N.D. Ill. Feb. 15, 2018) (same).

**C.** **Petitioners Offer To Avoid the Costs of Arbitration**

On September 14, 2018, Petitioners' counsel informed Lyft that they planned to file demands for arbitration and offered to discuss resolving the claims in an alternative manner, such as through mediation. Kayes Decl. ¶ 4.

Ultimately, the parties were not able to agree on an alternative to arbitration. *Id.* Petitioners then served 3,661 individual arbitration demands on Lyft, as follows:

- • October 26, 2018 — 1,123 individual demands

- • November 2, 2018 — 471 individual demands

- • December 7, 2018 — 2,067 individual demands

MOTION TO COMPEL ARBITRATION
CASE NO. 3:18-CV-7502

1   *Id.* ¶ 5.[1]

2       AAA will not commence arbitration until it receives the required filing fees. *See* AAA

3   Consumer Arbitration Rules, Rule 2. And under Lyft's Terms of Service, Lyft is required to pay

4   the filing fees. *See* Lyft's Terms of Service § 17(e). In a letter dated November 8, 2018, AAA

5   invoiced Lyft for the filing fees necessary to commence arbitration on the first 1,123 arbitration

6   demands, totaling $2,133,700 by December 10, 2018. *Id.*, Ex. B.

7       Instead of paying the filing fees as required by its own Terms of Service, Lyft has gone to

8   great lengths to stall the arbitration process. Lyft has asserted that Petitioners' counsel has a

9   conflict of interest that prevents them from representing Petitioners in their arbitrations. Kayes

10  Decl. ¶ 6. Lyft could have sought to disqualify Petitioners' counsel by asking for that relief in

11  arbitration. Instead, it filed a tort lawsuit against Petitioners' counsel in this Court, seeking money

12  damages and an injunction prohibiting them from representing Petitioners. The lawsuit is

13  captioned *Lyft, Inc. v. Postman*, No. 3:18-cv-06978-EMC.

14      Lyft then attempted to parlay its lawsuit into a suspension of Petitioners' arbitrations. On

15  November 30, 2018, Lyft filed an *ex parte* request with AAA asking it to suspend administration

16  of Petitioners' arbitrations in light of *Lyft v. Postman*. Kayes Decl., Ex. C. AAA declined to strip

17  Petitioners of their contractual right to arbitration. It rejected Lyft's request and confirmed that

18  Lyft was required to pay, by December 10, 2018, the $2,133,700 that AAA invoiced for the first

19  arbitration demands. *Id.*, Ex. E. December 10 came and went, and Lyft failed to pay the filing fee

20  for even a single arbitration. *Id.* ¶ 7. And worse, AAA will not even invoice Lyft for the remaining

21  2,538 Petitioners' arbitrations until Lyft pays this initial invoice. *Id.*

22      On December 11, 2018, after already having failed to pay AAA's fees as required, Lyft

23  sent another letter to AAA, claiming it should not have to pay any filing fees until Petitioners

24  satisfied two conditions not contained in Lyft's Terms of Service. *Id.*, Ex. F. First, Lyft stated that

25  it needed to know how Petitioners' counsel "plans to litigate" the arbitrations. *Id.* Second, Lyft

---

[1] The sum of these demands—3,661—is slightly larger than the 3,420 demands that are the subject of this motion. The remaining drivers have elected to treat, or are considering whether to treat, Lyft's actions as a waiver of its own arbitration provision such that the drivers may file their claims in court.

MOTION TO COMPEL ARBITRATION
CASE NO. 3:18-CV-7502

1    asserted that Petitioners' counsel must first "identify now what counsel would take over" in the

2    event Petitioners' counsel were prohibited from representing them. *Id*. Subject to those conditions,

3    Lyft stated that it was willing to "meet and confer" regarding arbitrating claims for a small subset

4    of Petitioners', but would only be willing to pay the filing fees necessary to commence "those

5    arbitrations that will proceed." *Id*.

6    **III.    STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)**

7          Whether the Court should compel Lyft to adhere to the arbitration provisions in its Terms

8    of Service and require it to timely pay the AAA filing fee for Petitioners' arbitration demands.

9    **IV.    ARGUMENT**

10         As Lyft itself has previously argued, courts must enforce agreements to arbitrate according

11   to their terms. Doing so is especially important here because class arbitration is unavailable under

12   the arbitration provisions. Lyft has successfully argued against class arbitration and class actions,

13   but now it balks when faced with a large number of individual arbitrations. Lyft's actions make

14   clear that it does not actually support arbitration; rather, it supports avoiding any method of dispute

15   resolution, no matter the forum.

16         **A.    The Parties Entered Into A Valid Arbitration Agreement That Covers The**

17               **Present Dispute.**

18         Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another

19   to arbitrate under a written agreement for arbitration may petition any United States district court

20   . . . for an order directing that such arbitration proceed in the manner provided for in such

21   agreement." 9 U.S.C. § 4. Courts analyze two "gateway" issues in deciding whether to compel

22   arbitration: (1) whether the parties have entered into a valid arbitration agreement, and (2) whether

23   the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84

24   (2002).[2]

---

25   [2] Petitioners can institute a court action by petitioning to compel arbitration. *See, e.g.*, *Unite Here
     Int'l Union v. Shingle Spring Band of Miwok Indians*, No. 2:16-cv-00384-TLN-EFB, 2016 WL
26   4041255, at *3 (E.D. Cal. July 25, 2016) ("[T]he Ninth Circuit and district courts in this circuit
     routinely treat petitions to compel arbitration as capable of instituting a court action."); *Bridgeport
27   Mgmt., Inc. v. Lake Mathews Mineral Props., Ltd.*, No. 14-CV-00070-JST, 2014 WL 953831 at
     *3 (N.D. Cal. Mar. 6, 2014) (permitting petitioner to institute suit by filing petition to compel
28   arbitration).

MOTION TO COMPEL ARBITRATION
CASE NO. 3:18-CV-7502

1    If the answer on both "gateway" issues is yes, "then the Act requires the court to enforce

2    the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys.,*

3    *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As detailed below, the parties have entered into a valid

4    arbitration agreement that covers the present dispute. The Court must compel Lyft to arbitrate

5    Petitioners' claims.

6                        1.     *The parties have entered into a valid arbitration agreement.*

7    There is no question that the parties entered into a valid arbitration agreement; indeed, Lyft

8    has previously argued as much. *See generally* Kayes Decl., Ex. A. The Ninth Circuit has held that

9    arbitration provisions similar to Lyft's are enforceable. *See Mohamed v. Uber Technologies, Inc.*,

10   848 F.3d 1201, 1211 (9th Cir. 2016).

11                       2.     *The arbitration agreement covers the present dispute.*

12   As a threshold matter, the fact that the parties have entered into a valid arbitration

13   agreement is sufficient by itself to compel arbitration, because Lyft's Terms of Service delegate

14   any question regarding the scope of the arbitration agreement to the arbitrator. *See* Lyft Terms of

15   Service § 17(a) ("All disputes concerning the arbitrability of a Claim (including disputes about the

16   scope, applicability, enforceability, revocability or validity of the Arbitration Agreement) shall be

17   decided by the arbitrator.").

18   Regardless, there also can be no question that the arbitration agreement covers the present

19   dispute. Except for certain disputes not relevant here (*e.g.*, claims under California's Private

20   Attorneys General Act), "any dispute, claim or controversy, whether based on past, present, or

21   future events, arising out of or relating to: this Agreement" shall be subject to binding arbitration.

22   *Id.* § 17(a).

23   Here, Petitioners demand arbitration because Lyft has misclassified them as independent

24   contractors. *See* Kayes Decl., Exs. H–I. Petitioners' claims falls within the parties' agreement,

25   which provides that "the relationship between the parties under this Agreement is solely that of

26   independent contracting parties." *See* Lyft's Terms of Service § 19.

27

28

6

1    But the Court need not take Petitioners' word for it. Lyft has previously argued that its
2    arbitration agreement "includes a broad delegation to arbitration," and that the "relating to"
3    language in the arbitration provision "must be read broadly." Kayes Decl., Ex. A at 19–20. Under
4    Lyft's own interpretation of its arbitration agreement, Petitioners' claims clearly fall within its
5    scope.

6    **B.    The Court Should Enforce the Arbitration Provisions And Require Lyft To**
7    **Timely Pay Outstanding Arbitration Fees.**

8    Lyft's arbitration provision provides that it "***shall*** pay all costs unique to arbitration . . .
9    including the regular and customary arbitration fees and expenses." Lyft's Term of Service
10   § 17(e)(3) (emphasis added). Lyft has not honored its commitment. Kayes Decl. ¶ 7. Thousands
11   of individuals are unable to seek relief for their claims because Lyft has refused to pay arbitration
12   fees even when AAA has ordered it to do so.

13   Numerous courts have found conduct similar to Lyft's as breaching an agreement to
14   arbitrate, thereby precluding a defendant from later seeking a stay under 9 U.S.C. § 3 or seeking
15   to compel arbitration under 9 U.S.C. § 4. *See, e.g.*, *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d
16   1287, 1294 (10th Cir. 2015) (lifting stay following termination of arbitration based on party's
17   refusal to pay fees despite multiple notices); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1009–10 (9th
18   Cir. 2005) (finding that a defendant that "breached its [arbitration] agreement . . . by refusing to
19   participate in the arbitration proceedings . . . cannot now enforce it"); *Sink v. Aden Enter.*, 352 F.3d
20   1197, 1200 (9th Cir. 2003) (affirming the district court's conclusion that the defendant defaulted
21   on its arbitration agreement, and holding that such default "precludes any attempt by [defendant]
22   again to stay district court proceedings pending a further reference to arbitration"); *McLellan v.*
23   *Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2018 WL 3549042, at *2–6 (N.D. Cal. July 24, 2018) (refusing
24   to follow *Sink*, *Brown*, and *Pre-Paid* only because defendant "paid its AAA fees in full" before
25   triggering suspension of arbitration, but nevertheless sanctioning defense counsel for "delay[ing]
26   and imped[ing] the arbitration on frivolous grounds"); *Rapaport v. Soffer*, No. 2:10-cv-00935-
27   KJD-RJJ, 2011 WL 1827147, at *2–3 (D. Nev. May 12, 2011) (denying motion to stay and motion

28

7

to compel arbitration and proceeding with litigation after plaintiff filed complaint after the arbitration was terminated due to defendant's nonpayment of fees); *Garcia v. Mason Contract Prods., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *1–2 (S.D. Fla. Aug. 18, 2010) (granting motion to reopen case after "Defendant persistently refused to timely pay its share of the arbitrator's fee, which resulted in the arbitrator dismissing the proceedings"); *Stowell v. Toll Bros*, No. 06-cv-2103, 2007 WL 30316, at *1 (E.D. Pa. Jan. 4, 2007) (holding that "failure to remit the filing fee constitutes default").

Lyft cannot have it both ways. This Court should require Lyft to pay the fees associated with Petitioners' arbitration demands.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Petitioners' motion to compel arbitration should be granted. This Court should require Lyft to abide by its agreement by paying all of Petitioners' arbitration filing fees within 30 days of the Court's Order, and paying future invoices related to Petitioners' arbitrations within 14 days of receipt of those invoices.

Dated: December 13, 2018                    Respectfully submitted,

/s/ Keith A. Custis
Keith A. Custis
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Ashley Keller (*pro hac vice forthcoming*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
  tdl@kellerlenkner.com
Tom Kayes (*pro hac vice forthcoming*)
  tk@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice forthcoming*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005

8

1

(202) 749-8334

2

*Attorneys for Petitioners*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

1

**[PROPOSED] ORDER**

2       Petitioners move this Court for an order compelling Defendant Lyft, Inc. ("Lyft") to

3   arbitrate Petitioners' claims in the arbitration demands they have filed pursuant to the parties'

4   contract. The Court, having considered the motion and supporting papers, any opposition, reply,

5   or other submissions of the parties, the arguments by counsel, and any other material properly

6   before the Court, and for good cause shown, hereby grants the petition to compel arbitration and

7   orders as follows:

8           • Within 30 days of this Order, Lyft shall pay the arbitration filing fees for all

9               arbitration demands submitted by Petitioners so that Petitioners' arbitrations may

10              commence;

11          • Lyft shall pay future invoices related to Petitioners' arbitrations within 14 days of

12              receipt of those invoices.

13   IT IS SO ORDERED

14

15   Dated _____

16                                                   _____

                                                      United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

     I certify that I shall cause the foregoing document to be served on Lyft, Inc. at its

3

headquarters at 185 Berry Street, Suite 5000, San Francisco, California 94107.

4

Dated: December 13, 2018.

5

6

/s/ Keith A. Custis

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28