# Exhibit G

# Keller | Lenkner

December 12, 2018

Mr. Jonathan Weed — JonathanWeed@adr.org
Director of ADR Services
American Arbitration Association
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

VIA ELECTRONIC DELIVERY

Re:     Lyft, Inc.

Dear Mr. Weed:

I write in response to your email requesting a response to the letter you received from Jamie Slaughter, counsel for Lyft, Inc., dated December 11, 2018.

Lyft already tried to persuade you to ignore the parties' contract and hold arbitration in abeyance. You correctly rejected that effort, determined that all Claimants have met the filing requirements, and upheld the December 10, 2018, deadline for Lyft to pay the required filing fees.

A day after missing the deadline to pay the filing fees, Lyft has a new stall tactic. It asserts that "it is prepared to pay now the filing fees for those arbitrations that will proceed." But Lyft is "prepared" to pay only if its new demands are met. In other words, Lyft *might* pay—not "now" but at some point in the future, and only for "those arbitrations that are actually proceeding," and only after an undefined "meet and confer" process to discuss "a payment schedule that makes sense." Actions speak louder than words. Lyft has not paid the past-due filing fees, and its new excuses are simply another attempt to obstruct the very arbitral process for which it and its drivers contracted.

The premise of Lyft's letter is that proceeding with Claimants' individual arbitrations "would present challenges," and that the parties and AAA therefore "need to meet and confer regarding precisely how the AAA intends to administer these actions." Yet Lyft cannot and does not dispute that each Claimant has filed a proper demand for arbitration; that each Claimant has satisfied every contractual requirement to seek arbitral relief; and that each Claimant's case can and must proceed on an individual basis. Lyft's refusal to pay the required filing fees until after a meet-and-confer process that applies to all Claimants as a class or group, rather than as individuals, finds no support in the parties' contract and cannot serve as a ground for delay. As for the logistics, Claimant's counsel will meet whatever challenges are imposed by the arbitration process. Lyft has no standing to refuse to commence arbitration pending an explanation from Claimants' counsel of how they plan to arbitrate for their clients. If Lyft refused to litigate in court unless opposing counsel proved they could handle the workload, the court would enter a default judgment against Lyft. AAA should be similarly unwilling to entertain Lyft's extra-contractual effort to avoid its obligations.

For the same reason, Lyft's previous *ex parte* communications with you are irrelevant. We recall AAA suggesting that the parties could proceed with a subset of the arbitrations. But in those conversations with us, AAA acknowledged that the parties would have to agree to that approach,

# Keller | Lenkner

because it would be a departure from the parties' contract. As Lyft well knows, the parties have not agreed to depart from the contract, and that contract insists that each driver receive a fair and *individualized* hearing. Indeed, the arbitration clause expressly forbids class actions or group proceedings. Accordingly, Lyft must treat each Claimant individually; Claimants cannot be grouped together merely because they are represented by the same law firm.

Each driver holds an individual contractual right to arbitrate with Lyft. It follows that AAA cannot—absent express agreement from each driver—eliminate that right for thousands of individual Claimants because Lyft would find it more efficient to arbitrate with only a few drivers while "holding the remaining arbitrations in abeyance." Lyft justifies its arbitration clause by extolling the efficiency, rapidity, and fairness of the arbitral forum. Having prohibited class actions and group arbitrations, Lyft cannot be heard to complain that individually aggrieved parties are seeking individual arbitrations. Any administrative burdens on Lyft and its counsel are entirely of Lyft's own making.

As a final excuse to put off arbitration, Lyft returns to Claimants' counsel's supposed conflict of interest. Lyft claims we ask AAA "to ignore the issue." That is false. Our prior correspondence makes plain that we both dispute the existence of a disqualifying conflict *and* nonetheless recognize Lyft's right to present disqualification arguments to properly empaneled AAA neutrals. A fair and impartial arbitrator can—and, pursuant to the parties' agreement, must—resolve the issue of disqualification, and arbitration must be instituted before that can occur. Claimants have no obligation, contractual or otherwise, to "identify now what counsel would take over" in the event their current counsel were unable to proceed. Should that unlikely event occur, Claimants would select replacement counsel to arbitrate their claims, just as litigants do when motions to disqualify are granted in court. In either forum, opposing counsel cannot refuse to proceed until they receive advance notice of a party's plans for alternative representation should their current counsel be disqualified.

As AAA has done throughout this process, it should administer Claimants' demands according to its regular practices and the parties' contract. Lyft must meet its undisputed contractual obligation to pay past-due filing fees to institute arbitration that AAA already has determined are procedurally proper.

Sincerely,

Ashley C. Keller

cc:    Candace Bertoldi — cbertoldi@seyfarth.com
       Jo Golub — jgolub@keker.com
       Rachael Meny — rmeny@keker.com
       R. James Slaughter — rslaughter@keker.com